UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANA YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:13-cv-00526-DKL-TWP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Diana Young ("Young") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Young's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Young filed applications for Disability Insurance Benefits ("DIB") on February 3, 2009, alleging an onset of disability of June 30, 2006. [Dkt. 12-2 at 17.] Young's applications were denied initially on May 8, 2009, and upon reconsideration on July 13, 2009. [Id.] Young requested a hearing, which was held on April 25, 2011, before Administrative Law Judge James R. Norris ("ALJ"). The ALJ denied Young's application on May 18, 2011. [Dkt. 13-2 at 14.] The Appeals Council denied Young's request for

review of the ALJ's decision on February 6, 2013, making the ALJ's decision final for purposes of judicial review. Young filed her Complaint with this Court on March 27, 2013. [Dkt. 1.]

### B. Factual Background and Medical History

Young was born on February 1, 1960 and was 51 years old on the date of the hearing. She has past relevant work as a janitor and teacher's aide. Young testified that she left her most recent job at Dairy Queen in 2006 because of pain and stiffness.

Young initially alleged in her application for disability impairments of hiatal hernia, gastroesophageal reflux disease ("GERD"), high cholesterol, chronic obstructive pulmonary disease ("COPD"), bronchitis, arthritis, and dysphasia. The ALJ found Young suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the shoulder, obesity and COPD. As Young and the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Young requests review.

## II. <u>LEGAL STANDARDS</u>

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

2

Step One: Is the claimant currently employed;

Step Two: Does the claimant have a severe impairment or combination of impairments;

Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

Step Four: Can the claimant perform his past relevant work; and

Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of

3

>credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Young claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Young contends the ALJ erred when he: (1) found that Young could sustain the walking and standing requirements of "light work,"; (2) negatively assessed Young's credibility; (3) found Young's ankle impairments were not severe; (4) improperly discounted new evidence; and (5) failed to properly address Young's obesity.

#### A. Walking and Standing Requirements of Light Work

Young first argues the ALJ's finding that she is capable of the walking and standing requirements of "light work" is not supported by substantial evidence. In support of her argument, Young points to two letters from Dr. Siegel dated December 14,

2010 and January 8, 2011. Dr. Siegel is an independent medical examiner who saw Young on one occasion and reviewed her previous medical records to form the basis of the opinion expressed in the December 14 letter. Dr. Siegel detailed Young's impairments including low back, neck, ankle and shoulder pain and concluded she is limited to lifting no more than 20 pounds at waist level and has limitations with standing and walking. [Dkt. 12-8 at 83-86.] Dr. Siegel expanded upon these findings in his January 8, 2011 letter (without a subsequent examination) noting that Young can stand and walk no more than 20 minutes before she must sit and rest; stand and walk no more than two and a half hours total in an eight hour work day and carry no more than five pounds for a total of 30 minutes a work day. [Dkt. 12-8 at 87.]

The ALJ noted the absence of a treating relationship between Young and Dr. Siegel and that his opinion conflicted with other evidence in the record. For example, Young sought treatment from an orthopedic specialist a few months earlier on August 30, 2010. At that time, her chief complaint was right shoulder pain and she reported her symptoms were very mild and declined surgical intervention. There was no mention of ankle pain or trouble standing and walking. [Dkt. 44-45.] The ALJ further noted that the testifying medical expert, an orthopedic specialist, testified that there should be no residual problems from either of Young's prior ankle injuries. The expert concluded that Young could perform light work including standing or walking up to six hours in an eight hour day. [Dkt. 12-2 at 39-42.]

Young argues that the ALJ's reference to the fact that Dr. Siegel was a paid consultant rather than a treating physician indicated the ALJ believed Dr. Siegel's opinion

5

was biased. The Court disagrees. The ALJ found Dr. Siegel's opinion to be less persuasive because it conflicted "sharply" with other evidence previously discussed in his opinion. Although the ALJ noted the context of the opinion as generated for Young's appeal, he also stated the evidence was "legitimate and deserves due consideration." [Dkt. 12-2 at 26.] The ALJ's decision to discount Dr. Siegel's opinion and determine Young was capable of the standing and walking requirements of light work (as found by two testifying physicians and the state agency physician) is supported by substantial evidence in the record and discussed in the opinion. Therefore, the finding does not provide a basis for remand.

### B. Young's Credibility

Young also contends the ALJ's negative credibility determination must be reversed because he failed to consider all of the credibility factors outlined in the regulations. Young further argues the ALJ improperly faulted her for "refusing surgery and cortisone injections" and failed to acknowledge the difficulties Young testified that she had performing activities of daily living. [Dkt. 16 at 15.]

In assessing a claimant's credibility when the allegedly disabling symptoms are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of

6

factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila*, 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)). The court must uphold the ALJ's credibility determination if the ALJ provides specific reasons, supported by the record, for discrediting the claimant's testimony. *See Ronning v. Colvin,* 555 Fed.Appx. 619, 623 (7th Cir. 2014).

Here, the ALJ detailed findings in the medical record and noted the inconsistencies. For example, during a physical consultative exam in April 2009, Young reported she was unable to lift weights or walk long distances due to arthritic pain, yet demonstrated a full range of motion and denied use of pain medication. In July 2009 Young sought treatment for increasing back pain, but the physical exam was unremarkable. The ALJ noted that "collectively, her examined body systems were relatively within normal range, failing to show significant limitations with her ability to function, as she so strongly asserted." [Dkt. 12-2 at 25.]

The ALJ did reference Young's disinterest in surgical intervention and other conservative treatment choices; however, these references do not equate to an assertion that Young is "less credible for not having surgery" as Young contends. [Dkt. 16 at 16.] Rather, they indicate the ALJ's belief that if Young was able to manage her pain without more aggressive treatment, it cannot be as debilitating as she asserts. Similarly, the ALJ concludes that Young's decision to not continue physical therapy for neck and low back pain "reasonably supports an inference that the claimant's symptoms were not as severe

7

as she asserts or that the pain medication was effective at controlling her pain." [Dkt. 12-2 at 26.]1

The ALJ thus provided ample reasons for his disbelief of Young's testimony. As such, the ALJ's credibility determination cannot be said to be "patently wrong" and must be allowed to stand.

### C. Severity of Ankle Impairments

Young asserts the ALJ erred when he found her alleged ankle impairments to be non-severe. Young again relies upon the opinion of Dr. Siegel, who limited her to standing no more than two and a half hours in an eight hour work day. As discussed above, the ALJ properly discounted Dr. Siegel's opinion. Additionally, Young has not produced evidence to show the alleged ankle impairment met the 12-month durational requirement to be disabling. Young fractured her ankle in July 2005, prior to the onset of disability date. Dr. Hutson testified the injury would not have been disabling for 12 months and would not have caused residual problems for someone of Young's age and weight. [Dkt. 12-2 at 40-41.] Therefore the ALJ did not err in finding the ankle impairment to be non-severe.

### D. Evaluation of New Evidence

Young also argues the Appeals Council should have remanded the case to the ALJ in light of an opinion by Dr. Trusler concerning her shoulder impairment. Young

---

1 Young notes that the Discharge Summary indicates physical therapy was discontinued at the request of the physician and patient. However, the Summary also indicates Young was discharged because she quit attending the appointments after six sessions. [Dkt. 12-8 at 77.]

8

submitted a letter dated July 7, 2011 (a month after the ALJ issued his decision) that restricted her from any "repetitive overuse activities and any type of strenuous use of her upper extremities" because of a partial rotator cuff tear and joint arthritis. [Dkt. 12-8 at 89.] Remand is warranted under sentence six of 42 U.S.C. § 405(g) if there is additional evidence that is new, material and not previously submitted for good cause. *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003).2 Plaintiff asserts Dr. Trusler's letter is "new and material evidence," yet fails to support that claim. [Dkt. 16 at 17.] To justify a remand, "new" means "'not in existence or available to the claimant at the time of the administrative hearing.'" *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997)). Although Dr. Trusler did not write the letter until after the hearing, the evidence referenced in the letter existed at the time of the hearing. Additionally, the ALJ's RFC accounted for restrictions consistent with Dr. Trusler's opinion by limiting Young to light work and no lifting weight above shoulder level. Accordingly, no remand is required.

E. **Evaluation of Obesity**

Young's final argument for remand asserts that the ALJ failed to consider the impact of her obesity upon her other impairments. But the ALJ's opinion actually addresses this issue several times. For example, the ALJ states that given Young's weight and limited mobility, her musculoskeletal pain would preclude work *above* the light level of exertion. [Dkt. 12-2 at 24.] He also notes that the restriction to light work "more than

---

2 Young does not seek a remand under sentence six; however, in the interest of fairness the Court will address it as such.

9

accommodates her subjective complaints of pain, shortness of breath and obesity." *Id*. at 25. Moreover, the testifying physician agreed Young's obesity did not limit her ability to work beyond the ALJ's RFC determination.

Young's argument here consists primarily of disjointed conclusory assertions. She states that the ALJ "did not address the fact that Ms. Young could not comply with the diet because of her GERD," yet fails to cite any support for this notion. She implies that her obesity exacerbates other impairments, but fails to explain how obesity limits her ability to work beyond the light work RFC assigned by the ALJ. See *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (holding that claimant must articulate how obesity limits her functioning and exacerbates her impairments). Here, the ALJ found Young's obesity to be a severe impairment and accounted for the combined impact of her impairments by limiting Young to light work. There is no medical evidence in the record to support the notion that Young's obesity caused any greater restrictions than the ALJ's RFC finding.

## IV.  CONCLUSION

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot

find a legal basis to overturn the ALJ's determination that Young does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

Date: 11/3/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jonelle L. Redelman
REDELMAN LAW
jonelle@redelmanlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov